McCARTY FARMS, INC., et
al., Plaintiffs,
v.
BURLINGTON NORTHERN, INC., a
corporation, Defendant.

No. CV–80–103–GF.

United States District Court,
D. Montana,
Great Falls Division.

Aug. 10, 1981.

J. Max Harding, Murray Ogborn, Nelson & Harding, and Murray Ogborn, Lincoln, Neb., Alex Blewett, Jardine, Stephenson, Blewett & Weaver, Great Falls, Mont., for plaintiffs.

Gary H. Peterson, Billings, Mont., William R. Power, Burlington Northern, Inc., St. Paul, Minn., for defendant.

## MEMORANDUM

HATFIELD, District Judge.

Plaintiffs commenced this action on September 11, 1980, invoking the jurisdiction of this court under 49 U.S.C. § 11705(c)(1) and 28 U.S.C. § 1337. Plaintiffs allege defendant Burlington Northern, Inc., charged unjust and unreasonable freight rates for shipment of wheat from points in Montana to Pacific Northwest Coast terminals during the period from September 12, 1978, to September 12, 1980, in violation of Title 49, U.S.C. § 11701(a) of the Interstate Commerce Act.

Plaintiffs filed suit on their own behalf and as representatives of the class composed of approximately 10,000 persons, farming corporations and farming partnerships, all engaged in the business of growing, selling and shipping or causing to be shipped, wheat in and from the State of Montana to Pacific Northwest Coast terminals in the States of Oregon and Washington.

On January 26, 1981, plaintiffs filed a motion to maintain class action and for certification of the class, together with supporting affidavits and memorandum. On February 9, 1981, defendant filed a memorandum in reply to plaintiffs' motion to maintain class action and for certification of the class, together with supporting affidavit, setting forth its specific challenges to the certification of the class and, thereafter, plaintiffs filed their reply memorandum.

The parties, through their respective counsel, entered into a stipulation for class certification, dated March 16, 1981, whereby it was agreed that the Interstate Commerce Commission had exclusive jurisdiction to determine the reasonableness of freight charges put in issue by plaintiffs' amended complaint, and that there existed a class of individuals or entities with standing to raise the issue of reasonableness of freight charges made by defendant during the period of time referred to in the amended complaint. The parties requested by stipulation that this court enter its order certifying the class, leaving for later determination defendant's challenge to the class based on standing and other jurisdictional questions and refer the issue of reasonableness of

freight charges to the Interstate Commerce Commission for determination.

On March 16, 1981, this court ordered the action be maintained as a class action in accordance with Rule 23(b)(3), reserving the issue of standing as raised by defendant's memorandum in reply to plaintiffs' motion to maintain class action and for certification of the class.

Defendant takes the position that the named plaintiffs lack standing to bring this action as representatives of a class for the reason that they were not directly injured by any acts of the defendant.

The matter, now being ripe for disposition, requires this court to determine whether or not the plaintiffs have the requisite standing to maintain a class action.

*INTRODUCTION*

Analysis of the issue with which this court is presented must begin with an attempt to clarify the actual issue presented. Plaintiffs' desire to maintain a class action, incorporating into the class seeking relief both wheat growers (consignors), who consigned their wheat to grain elevator operators (consignees), who in turn shipped the wheat (or portions thereof) via the defendant's railroad.

The defendant-railroad contends that the plaintiff-wheat growers lack individual standing, a prerequisite to maintaining a class action.[1] The defendant premises its contention on the fact that the plaintiff-wheat growers were one or more commercial transactions removed from the transportation contracts.[2] Since this position forces the plaintiff-wheat growers to establish that the alleged overcharge was in fact passed-on to them from the elevator operators, the defendant-railroad submits that

the decisions of the United States Supreme Court regarding the utilization of the concept of "pass-on"[3] in damage suits for alleged antitrust violations,[4] dictate that the plaintiff-wheat growers in the case at bar lack individual standing.[5]

The plaintiff-wheat growers counter by stressing that they have clearly satisfied the requirements of individual standing, having demonstrated (1) an "injury in fact" and (2) that the interests for which redress is sought are within the "zone of interests" protected by 49 U.S.C. § 11701(a) of the Interstate Commerce Act.

*DISCUSSION*

A. *OVERVIEW*

This court cannot summarily accept the proposition advanced by the defendant-railroad at bar merely because the plaintiff-wheat growers were one commercial transaction removed from the transportation contracts at issue. Rather, disposition of the issue as to whether the plaintiff-wheat growers have individual standing to pursue their claim for reparation necessitates that this court review and assess two bodies of law. First, the court must determine whether or not the body of case law which has evolved concerning standing in suits for reparation under the Interstate Commerce Act, dictates that parties who are one or more commercial transactions removed from a transportation contract for which reparation is sought lack standing. Secondly, if this court determines that such parties do have individual standing, then it must be determined whether the body of law concerning the utilization of "pass-on" in the antitrust context is applicable by analogy to such suits for reparation under the Inter-

---

1. Citing *Baker v. Carr*, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962).

2. Defendant maintains that the wheat growers having consigned their wheat to the grain elevator operators, never in fact paid the alleged overcharge, but rather the grain elevator operators are the only entities which contracted with and paid for the services of the defendant. As such, the defendant maintains it is the grain elevator operators and they alone who have the standing to sue.

3. The theory of "pass-on" entails an indirect purchaser of goods or services establishing injury in fact by showing that an illegal over-

charge was passed on to him by the direct purchaser.

4. *Illinois Brick Co. v. State of Illinois*, 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977); *Hanover Shoe Inc. v. United Shoe Machinery Corp.*, 392 U.S. 481, 88 S.Ct. 2224, 20 L.Ed.2d 1231 (1968).

5. As previously noted, the plaintiff-wheat growers can only establish "injury in fact" by showing that the plaintiff-elevator operators "passed-on" the freight charges to them as consignors of the wheat shipped via the defendant's railroad.

state Commerce Act. Finally, if such analogy is appropriate, it must be determined if the rules of law concerning "pass-on" serve to bar the plaintiff-wheat growers' claim as too remote. That determination of course will require an exacting analysis of the principles upon which that rule of law is founded.

### B. STANDING IN SUITS FOR REPARATION UNDER 49 U.S.C. § 11701(a).

Review of the pertinent case law reveals that the Supreme Court has had occasion to address the utilization of "pass-on" from a defensive posture in actions concerning the Interstate Commerce Act.[6]

In *Darnell-Taenzer, supra*, the Court was confronted with the issue of whether the plaintiff, who paid unreasonable freight charges in the first instance but subsequently "passed-on" the damage sustained to purchasers, lacked standing to recover for the overpayment. The Court determined that the plaintiffs suffered losses when they paid the overcharge and their claim accrued at that time regardless of what later transpired. 245 U.S. at 534, 38 S.Ct. at 186. Therefore, the Court did not allow "pass-on" as a defense.

The Supreme Court had occasion in *Adams, supra*, to again address the utilization of "pass-on" as a bar to standing in the context of alleged violations of the Interstate Commerce Act. The Court held that the consignees of livestock shipments had standing to bring a claim for reparation regardless of the fact that the consignees passed the freight charges on to the consignors and in effect suffered no pecuniary loss. 286 U.S. at 406, 52 S.Ct. at 591. It is indeed important to note that the Court acknowledged *in dicta* that the consignor-shippers would have had proper standing had they sought to intervene in the action. 286 U.S. 407–08, 52 S.Ct. at 591–92.

For purposes of the present analysis it is important to recognize that the Court in *Adams, supra*, addressed two distinct issues, namely (1) the effect of "pass-on" upon individual standing and (2) individual standing itself in suits for reparation under the Interstate Commerce Act. This distinction is critical in light of the fact that the contentions of the parties to the present action are in fact addressing these distinct issues. The plaintiff-wheat growers maintain that, as consignors of the wheat shipments at issue, they have individual standing to sue for reparation. The *dicta* from *Adams*, noted above, establishes that the plaintiff-wheat growers as consignors do in fact have individual standing.

The contention raised by the defendant-railroad, however, places in issue the question of whether the fact that the plaintiff-wheat growers will have to utilize the theory of "pass-on" to establish that they suffered "injury in fact" (a requisite of individual standing), bars their claim.

The defendant-railroad contends that since the theory of "pass-on" is interjected into the plaintiff-wheat growers' claim, the present situation is within the purview of the principles of law concerning "pass-on" espoused in cases involving alleged violations of the Clayton Anti-Trust Act, 15 U.S.C. § 15.[7] Although the gravamen of the present action lies in an alleged violation of § 11701(a) of the Interstate Commerce Act, Title 49 U.S.C., the defendant-railroad submits that the Supreme Court's proscription of the use of "pass-on" in antitrust suits is applicable in the present context, since there exists the same complexities extant in the antitrust context.

Analysis of the defendant's proposition requires this court to undertake a two step process. First, this court must determine if the rule of law concerning the use of "pass-on" espoused in the antitrust context is applicable by analogy to the use of "pass-on" in the context of alleged violations of

---

**6.** *Adams v. Mills*, 286 U.S. 397, 52 S.Ct. 589, 76 L.Ed. 1184 (1932); *Southern Pacific Co. v. Darnell-Taenzer Lumber Co.*, 245 U.S. 531, 38 S.Ct. 186, 62 L.Ed. 451 (1918).

**7.** *See*, footnote # 4, *supra*.

the Interstate Commerce Act, Title 49 U.S.C. Assuming the analogy is appropriate, it must then be determined if the rule is controlling as to the present factual situation.

## C. EFFECT OF THE LAW REGARD-ING "PASS–ON" ON PLAINTIFFS' STANDING.

The principal cases cited by the defendant-railroad in support of its proposition, *Hanover Shoe, supra,* and *Illinois Brick, supra,* dealt with treble damage actions brought under § 4 of the Clayton Act, 15 U.S.C. § 15, for alleged antitrust violations. In *Hanover Shoe,* a company that had overcharged its customers was sued by one such customer under § 4. The Supreme Court espoused the general rule, that as a matter of law an antitrust violator may not interpose as a defense that a direct purchaser has not been injured because it has "passed-on" the illegal overcharge to its own customers.

In order to establish a symmetrical rule with regard to the utilization of "pass-on" in § 4 actions, the Supreme Court in *Illinois Brick* barred the offensive use of "pass-on" by indirect purchasers whenever the antitrust defendant would be precluded from asserting the "pass-on" defense against a direct purchaser.

The principal basis upon which both *Hanover Shoe* and *Illinois Brick* were founded lay in the Court's belief that to allow the use of "pass-on" in either context would greatly complicate and reduce the effectiveness of treble damages proceedings if they were to include an analysis of the price and output decisions of a direct purchaser to determine how much of the illegal overcharge was absorbed by it and how much was passed on.[8]

The defendant-railroad seeks to impress upon this court that the rule of law espoused in the antitrust context bars the plaintiff-wheat growers from maintaining the present action in light of the fact that since they are one commercial transaction

removed from the transportation contracts at issue, they are relegated to a position from which they must utilize "pass-on" to establish their claim for reparation.

The defendant-railroad's contention is premised on the belief that since the Supreme Court has specifically prohibited the interposition of a "pass-on" defense in actions founded on the Interstate Commerce Act,[9] the same considerations which prompted the Supreme Court to predicate a rule of symmetry concerning the utilization of "pass-on" in antitrust actions dictate that a rule of symmetry must be employed in the context of Interstate Commerce Act violations. As the Court acknowledged in *Illinois Brick* :

... whatever rule is to be adopted regarding pass-on in antitrust damages actions, it must apply equally to plaintiffs and defendants.

431 U.S. at 728, 97 S.Ct. at 2066.

This court recognizes that the same desire for uniformity that existed in the antitrust context is undoubtedly present in the context of the Interstate Commerce Act. However, this willingness to accept as a general proposition the propriety of a rule of symmetry regarding the utilization of "pass-on" in the context of suits for reparation under the Interstate Commerce Act does not end this court's inquiry. The fact that this court recognizes that the decisions in *Hanover Shoe* and *Illinois Brick* represent the controlling law as to the utilization of "pass-on" in civil actions, requires it to determine the modifying effect those cases had on previous law concerning the utilization of "pass-on". It is noted in this regard that the cases of *Adams, supra,* and *Darnell-Taenzer, supra,* pre-date the Supreme Court's decisions in *Hanover Shoe* and *Illinois Brick,* and as such, may have been seriously modified by these latter decisions. To determine the extent of modification, if any, requires assessment of the two distinct issues which this court alluded to

8.  431 U.S. at 731–33, 97 S.Ct. at 2067–68.

9.  *See* footnote # 6, *supra.*

earlier[10] and which the Supreme Court acknowledged in *Illinois Brick*. There the Supreme Court stated:

> . . . [t]he question of which persons have been injured by an illegal overcharge for purposes of § 4 is analytically distinct from the question of which persons have sustained injuries too remote to give them standing to sue for damages under § 4.

431 U.S. at 728, footnote # 7, 97 S.Ct. at 2065–66, footnote # 7.

Although the court unequivocally recognized the distinction, it expressly declined to address the standing issue, finding instead that the plaintiff's claim was barred based on the fact that the injury sustained was too remote to allow standing to sue for damages under § 4 of the Clayton Act.

In light of this critical distinction, disposition of the standing question in the present case requires the court to take cognizance of which issue is in fact being addressed since determination of whether the wheat growers have the requisite individual standing can only be accomplished by assessment of both of these distinct issues.

First, it must be determined whether the wheat growers have standing under the traditional rules which govern that concept (*i. e.*, whether they sustained "injury in fact" within the purview of the Interstate Commerce Act). Assuming that the wheat growers can establish the necessary requisites, the *Adams* holding clearly establishes that as consignors, they do not lose their standing because the consignee-elevator operators also have standing. The rule of *Illinois Brick* cannot be relied upon for simply proposing that the wheat-growers have no standing, since the Supreme Court expressly stated it was *not* addressing the issue of standing.

Thus this court is brought to the second issue, that being whether the injuries sustained by the plaintiff-wheat growers are too remote to give them standing to sue for reparation. It is at this step in our analysis

that the determination of whether the rule of symmetry regarding the utilization of the concept of "pass-on" renders the plaintiff-wheat growers' claims too remote.

Although this court is willing to recognize as a general proposition the propriety of a rule of symmetry regarding the utilization of "pass-on" in the context of suits for reparation for alleged violations of the Interstate Commerce Act, this cannot be taken to mean that the utilization of the "pass-on" theory is prohibited in all conceivable factual circumstances for which reparation is sought. Under *Hanover Shoe* and *Illinois Brick* the "pass-on" theory may still be used, offensively or defensively, in the limited circumstances when tracing the interaction of market forces is unnecessary.[11]

Since this court is being asked to make a novel extension of the *Hanover Shoe-Illinois Brick* rationale it cannot only recognize that application of that rationale by analogy is appropriate, but it must also determine if the application of that rule is appropriate in the factual context with which it is presented so as to preclude the plaintiff-wheat growers from maintaining this action.

The mere fact that in *Adams, supra,* the Supreme Court ruled that "pass-on" could not be utilized from a defensive posture, does not automatically mean that the use of "pass-on" may not be used offensively. Rather, since the *Hanover Shoe* and *Illinois Brick* decisions are now the controlling law, the rationale of those cases must be applied to the present factual situation to determine if the plaintiff-wheat growers may utilize "pass-on" to establish their claim.

This court is of the opinion that the considerations which led the Supreme Court in *Illinois Brick* to conclude that the claims of indirect purchasers were too remote to allow them standing and hence bar the utilization of "pass-on" to establish that claim, are not present in the case at bar.

In *Illinois Brick*, the Supreme Court reasoned that a rule of symmetry regarding

---

**10.** *See* page 488, *supra.*

**11.** *Mid-West Paper Products Co. v. Continental Group Inc.*, 596 F.2d 573, 577 (1979).

the utilization of "pass-on" was necessitated for two reasons: (1) to protect defendants from the serious risk of multiple liability [12] and (2) to avoid the great complication and reduction in effectiveness of treble damage proceedings if they were to include an analysis of the price and output decisions of a direct purchaser to determine how much of the illegal overcharge was absorbed by it and how much was passed on.[13]

An exacting analysis of the present factual situation reveals to this court that the overriding concerns which barred the offensive use of "pass-on" in the antitrust context do not mandate that the plaintiff-wheat growers should be ineligible to sue for reparation in the present action.

The threat of duplicative recoveries is alleviated by the fact that those parties (i. e., consignors and consignees) entitled to recover under 49 U.S.C. § 11705(b)(1) may be joined in a single action. As such the potential amount of reparation may be allocated accordingly to those parties who establish that they in fact paid the alleged overcharge. The situation is clearly distinct from that in *Illinois Brick* where there existed potential plaintiffs at numerous levels in a distribution chain who were in a position to assert conflicting claims to such a common fund—the amount of the alleged overcharge—by contending that the entire overcharge was absorbed at their particular level in the chain.[14]

Neither does there exist the threat of any great complexity and reduction in effectiveness of proceedings that the court envisioned in the antitrust context.[15]

The complexities the defendant-railroad submits brings the present situation within the purview of the *Hanover Shoe-Illinois Brick* rationale are different in kind than those the Supreme Court perceived would afflict antitrust litigation.[16] The complexities cited by the defendant-railroad do not involve the tracing of complex economic adjustments concerning price and output decisions affected by an alleged overcharge which concerned the Supreme Court in the antitrust context,[17] but rather, address the question of manageability. In that vein, Rule 23, Fed.R.Civ.P., obviously vests this court with wide discretion in its application of the various guidelines, including manageability, set forth in section 6(3).

Regardless of the fungible nature of wheat, this court would indeed appear naive were it to overlook the fact that the business records of the parties involved may accurately reflect what specific wheat grower was ultimately charged for shipment via the defendant's railroad for a specific amount of wheat. This court fails to see the relevance of the defendant's argument that certain wheat could not be specifically identified. This court would be remiss were it to summarily dismiss the plaintiff-wheat growers from this action

---

**12.** Such risk was described as follows:
> Even though an indirect purchaser had already recovered for all or part of an overcharge passed on to it, the direct purchaser would still recover automatically the full amount of the overcharge that the indirect purchaser had shown to be passed-on; similarly, following an automatic recovery of the full overcharge by the direct purchaser, the indirect purchaser could sue to recover the same amount.

*Id.* 431 U.S. at 730, 97 S.Ct. at 2067.

**13.** 431 U.S. at 731–33, 97 S.Ct. at 2067–68.

**14.** 431 U.S. at 737, 97 S.Ct. at 2070.

**15.** The complexities the Supreme Court envisioned would result by allowing the use of "pass-on" in the antitrust context involved the uncertainties and difficulties appurtenant to any attempt to trace the complex economic adjustments to a change in the cost of a particular factor of production since to do so would require analysis of price and output decisions made as a result of an illegal overcharge.

**16.** The defendant contends that because of the fungible nature of the wheat itself (i. e., losing its identity upon tender to the elevator for subsequent storage or shipment), and the varying modes of shipment to numerous destination points, that tracing of damages would be impracticable if not impossible. This contention in no way supports defendant's proposition that the *Hanover Shoe-Illinois Brick* rationale is controlling since it addresses "manageability" of the class and not the question of "remoteness" of injury on which the *Hanover Shoe-Illinois Brick* rationale is founded.

**17.** 431 U.S. at 731–32, 97 S.Ct. at 2067–68.

without giving them the opportunity to establish that the business records of the parties involved adequately reflect that for a certain amount of wheat shipped via the defendant's railroad a particular plaintiff-wheat grower's account was debited for freight charges which accrued.

For the reasons set forth in the above discussion this court fails to find that the plaintiff-wheat growers' claim for reparation is too remote, within the meaning of the *Illinois Brick* decision, to bar them standing and hence bar their utilization of "pass-on" to establish injury in fact.

Based on the affidavits submitted by the plaintiffs, this court further finds that the plaintiffs have established to the satisfaction of this court that (1) they have sustained "injury in fact" and (2) that the interests for which redress is sought are within the "zone of interests" protected by 49 U.S.C. § 11701(a) of the Interstate Commerce Act.

For the reasons set forth herein, this court finds that the named plaintiffs have the requisite standing to maintain a class action.